**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

ROBERT M.,[1]
Plaintiff,

Case No. 3:25-cv-00287
Rose, J.
Litkovitz, M.J.

vs.

COMMISSIONER OF SOCIAL SECURITY,
Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Robert M. brings this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application for supplemental security income (SSI). This matter is before the Court on plaintiff's statement of errors (Doc. 8), the Commissioner's response (Doc. 10), and plaintiff's reply. (Doc. 11).

## I. Procedural Background

Plaintiff protectively filed his application for SSI in January 2023, alleging disability beginning June 1, 2020, due to congestive heart failure, chronic kidney disease, and memory issues. (Tr. 184-200, *see also* Tr. 220). The application was denied initially and on reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge (ALJ) Stuart Adkins. On May 13, 2024, plaintiff and a vocational expert (VE) appeared by telephone and testified at the ALJ hearing. (Tr. 41-68). On August 7, 2024, the ALJ issued an unfavorable decision. (Tr. 14-35). On June 30, 2025, this decision

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment, or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

became the final decision of the Commissioner when the Appeals Council denied review. (Tr. 1-6).

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for SSI, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 416.920(a)(4)(i)-(v), 416.920 (b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th

Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

**B. The Administrative Law Judge's Findings**

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. [Plaintiff] has not engaged in substantial gainful activity since January 27, 2023, the application date (20 CFR 416.971 *et seq.*).
>
> 2. [Plaintiff] has the following severe impairments: Obesity; Coronary Artery Disease (CAD); Degenerative Disc Disease (DDD) of the cervical and lumbar spine; Congestive Heart Failure (CHF); Chronic Kidney Disease (CKD); Osteoarthritis (OA) of the hands and shoulders; Diabetes Mellitus (DM2); Anxiety; and Depression (20 CFR 416.920(c)).
>
> 3. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, the [ALJ] finds that [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except he can lift and/or carry 20 pounds occasionally and 10 pounds frequently; can stand and/or walk for about 4 hours and sit for about 6 hours in an 8 hour workday; can never climb ladders ropes and scaffolds; can occasionally climb ramps and stairs, stoop, kneel, crouch and crawl; can frequently balance; can occasionally reach overhead bilaterally; can frequently handle, finger and feel bilaterally; can tolerate occasional concentrated exposure to extreme heat, extreme cold, and humidity; should avoid unprotected heights, dangerous machinery, and commercial driving; can perform simple routine tasks but not at a production rate pace and without strict performance quotas; is limited to occasional superficial contact with the general public, coworkers and supervisors with "superficial contact" defined as retaining the ability to receive simple instructions, ask simple questions, and receive performance appraisals but as lacking the ability to engage in more complex social interactions such as persuading other people or rendering advice; can tolerate occasional changes to a routine work setting defined as 1-2 per week where those changes are explained in advance.

5. [Plaintiff] has no past relevant work (20 CFR 416.965).

6. [Plaintiff] was born [in] . . . 1971 and was 51 years old, which is defined as a younger individual age 18-49, on the date of the application was filed. [Plaintiff] subsequently changed age category to closely approaching advanced age (20 CFR 416.963).

7. [Plaintiff] has a limited education (20 CFR 416.964).

8. Transferability of job skills is not an issue because [plaintiff] does not have past relevant work (20 CFR 416.968).

9. Considering [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform (20 CFR 416.969 and 416.969(a)).[2]

10. [Plaintiff] has not been under a disability, as defined in the Social Security Act, since January 27, 2023, the date the application was filed (20 CFR 416.920(g)).

(Tr. 19-34).

**C. Judicial Standard of Review**

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. .

[2] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative light, unskilled occupations such as routing clerk (40,950 jobs in the national economy); inspector/hand packager (21,624 jobs in the national economy); and mail room clerk (12,690 jobs in the national economy). (Tr. 34, 62-63).

. ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Napier v. Comm'r of Soc. Sec.*, 127 F.4th 1000, 1004 (6th Cir. 2025) ("Even when an ALJ's decision is supported by substantial evidence, we will reverse the decision if we find that the ALJ failed to follow the applicable procedural regulations.") (*citing Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016)).

**D. Specific Errors**

Plaintiff contends that the ALJ erred in determining his residual functional capacity (RFC). Specifically, plaintiff argues that the ALJ erred by: (1) finding that he is capable of balancing "frequently" because that term is inconsistent with the ALJ's finding that he is limited to standing and/or walking for four hours per workday; (2) finding that he can "frequently handle, finger, and feel with the dominant right upper extremity"; (3) impermissibly interpreting a critical body of objective medical evidence in functional terms; and (4) conflating the required 20 C.F.R. § 416.920c supportability and consistency factors when evaluating the prior administrative medical findings of the state agency reviewers.

1. <u>"Frequently" balance</u>

Plaintiff argues that "frequent" is defined by the Social Security Rulings[3] (SSRs) as occurring up to two thirds of the time (i.e., up to six hours in an eight-hour workday), and "balancing" is defined by the Selected Characteristics of Occupations (SCO) as related to walking or standing. Given this, plaintiff argues that it is inherently inconsistent for the ALJ could find that plaintiff could stand and/or walk for only four hours a day but balance up to six hours per day.

The Commissioner argues that neither the regulations nor caselaw supports plaintiff's argument, and that the two limitations are not mutually exclusive. The Commissioner also argues that the VE considered the work available to a hypothetical person with both of these limitations, and the ALJ was permitted to rely on that opinion—notwithstanding the fact that plaintiff later perceived inconsistencies between these limitations.

In reply, plaintiff adds that the Appeals Council has remanded on this issue in other cases.

The Court finds no reversible error. Under SSR 83-10, "frequent" is defined as "occurring from one-third to two-thirds of the time." 1983 WL 31251, at *6 (Jan. 1, 1983). The SCO defines "balancing" as follows: "Maintaining body equilibrium to prevent falling when walking, standing, crouching, or running *on narrow, slippery, or erratically moving surfaces*; or maintaining body equilibrium when performing gymnastic feats." U.S. Dept. of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993), App. C-3, available at https://www.scribd.com/doc/265566887/sco-pdf (last visited October 6, 2026) (emphasis added). Under the SCO, "balancing" is a specialized activity performed on a

[3] "Social Security Rulings do not have the force and effect of law, but are 'binding on all components of the Social Security Administration' and represent 'precedent final opinions and orders and statements of policy and interpretations' adopted by the Commissioner." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 272 n.1 (6th Cir. 2010) (quoting 20 C.F.R. § 402.35(b)(1)).

hazardous surface. It is not defined in terms of ordinary standing or walking. The ALJ's limitations on "standing/walking" and "balance" measure different activities, so there is no inconsistency in the ALJ's findings on each. Plaintiff fails to offer case law or other authority suggesting that these two limitations are necessarily contradictory, and the fact that "frequently" is defined in terms of a range—from one-third to two-thirds of a workday—belies such a conclusion.

In addition, the ALJ's hypothetical to the VE included both limitations, and the VE testified that several jobs were available with overall job numbers reduced to meet "the conditions in the hypothetical." (Tr. 62). The ALJ's decision in this regard is based on substantial evidence. *See Branon v. Comm'r of Soc. Sec.*, 539 F. App'x 675, 680 (6th Cir. 2013) ("So long as the hypothetical is accurate, the [ALJ] may rely on the [VE]'s testimony to find that the plaintiff can perform a significant number of jobs in the national economy."). *See also Kimberly P v. Comm'r of Soc. Sec.*, No. 1:22-cv-596, 2023 WL 3320419, at *5 (S.D. Ohio May 9, 2023) (no error where the ALJ appropriately defined the claimant's limitations and the VE testified that such an individual still could perform specific representative jobs in the light work category). Plaintiff's assignment of error should be overruled.

2. <u>"Frequently handle, finger and feel" with the dominant right upper extremity</u>

Plaintiff argues that the ALJ erred by finding that he could frequently handle, finger, and feel with his dominant right upper extremity. He argues that plaintiff's treatment record and recent (April 2024) assessment by Jonathan Paley, M.D., show greater limitation. To support this conclusion, plaintiff block quotes several pages each of the ALJ's decision and Dr. Pauley's examination record and asserts that the ALJ failed to build a logical bridge between the evidence discussed therein and his conclusions.

The Commissioner argues in response that the ALJ acknowledged plaintiff's limitations due to numbness and cervical spine issues but also discussed several records reflecting that plaintiff did not exhibit strength, range of motion, motor skill, or sensation issues. The Commissioner further argues that neither Dr. Pauley nor Daniel J. Quinones, M.D., opined as to any particular limitations; and the ALJ assessed a greater limitation than the state agency reviewers that *did* offer an opinion—which was that plaintiff was not limited in this area at all. The Commissioner argues that plaintiff does not point to evidence the ALJ overlooked—to the contrary, he simply block quotes the ALJ's decision without a clear argument. As such, the Commissioner argues that plaintiff fails to demonstrate that the ALJ's decision was not based on substantial evidence.

In reply, plaintiff argues that he has cited ample evidence inconsistent with the ALJ's RFC determination that plaintiff frequently use his dominant right upper extremity to handle, finger, and feel.

The ALJ is charged with the final responsibility in determining a claimant's RFC. *See* 20 C.F.R. § 416.946(c). A claimant's RFC is an assessment of "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). A claimant's RFC assessment must be based on all the relevant medical and other evidence in her case file. 20 C.F.R. § 416.945(a)(3). The governing regulations[4] describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 416.913(a)(1)-(5). With regard to two of these categories—medical opinions and prior administrative findings—an ALJ is

[4] Plaintiff's application was filed after March 27, 2017. Therefore, it is governed by the revised regulations redefining how evidence is categorized and evaluated when an RFC is assessed. *See* 20 C.F.R. §§ 416.913(a), 416.920c.

not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the claimant's] medical sources." 20 C.F.R. § 416.920c(a).

The ALJ's decision is supported by substantial evidence. In the portions of the ALJ's decision quoted at length (but without annotation) by plaintiff, the ALJ observed abnormalities related to plaintiff's upper extremities, including abnormal range of motion in December 2023 (Tr. 21, referring to Tr. 448-50); upper extremity pain, range of motion issues, tenderness, and reflex issues in September 2023 (Tr. 22, referring to Tr. 363-64); slightly decreased left upper extremity strength and decreased sensation in January 2024 (Tr. 22, referring to Tr. 479-84); and right shoulder pain with certain movements, slightly diminished rotator cuff strength, left shoulder trigger points, crepitus, and non-neurologic scapular dysfunction in April 2024 (Tr. 23-24, referring to Tr. 743-45).

The ALJ also, however, discussed records (including elements of those referenced above) that did not show strength, range of motion, or sensation issues. In January 2023, plaintiff neither reported nor exhibited musculoskeletal or neurological symptoms. (Tr. 20, referring to Tr. 407-08). In February 2023, plaintiff denied muscle or back pain, numbness, weakness, or tingling. (*Id.*, referring to Tr. 314). In May 2023, plaintiff reported no issues with his extremities and normal motor skills. (*Id.*, referring to Tr. 360). In September 2023, plaintiff had a normal review of symptoms except neck pain that radiated down shoulders. (*Id.*, referring to Tr. 455). Plaintiff had an active range of motion of both upper extremities and normal motor skills. (*Id.*, referring to Tr. 456-57).

Plaintiff also relies on Dr. Pauley's April 2024 summary of plaintiff's condition. (*See* Tr. 743-44), which—plaintiff notes—was *not* reviewed by the state agency reviewers that assessed

plaintiff with an unlimited ability to handle, finger, and feel (*see* Tr. 74, 86). Dr. Pauley observed a long history of cervical spine issues with radiating shoulder pain; weak upper extremities; and numbness and tingling in both hands. (Tr. 743-47). Nowhere in this record, however, does Dr. Pauly opine that plaintiff should be limited with respect to his handling, fingering, and feeling. (*See id.*). In addition, the ALJ assessed plaintiff with a *greater* limitation than was opined by the state agency reviewers that did opine on that ability. *See Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 848 (6th Cir. 2020) (where an ALJ assesses a greater limitation than opined by a medical provider, this shows an "even-handed evaluation").

"Even if the evidence could also support another conclusion, the decision of the [ALJ] must stand if the evidence could reasonably support the conclusion reached." *Livingston v. Comm'r of Soc. Sec.*, 776 F. App'x 897, 898 (6th Cir. 2019) (alteration in original) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)). There is substantial evidence to support the ALJ's conclusion that plaintiff can frequently handle, finger and feel. Therefore, this assignment of error should be overruled.

3. Interpreting objective medical evidence in functional terms

Plaintiff next argues that an ALJ's decision must be remanded if the work-related limitations are not based on a medical source opinion or are based on an outdated opinion that does not take into account critical medical evidence. Plaintiff argues that, in such a situation, the ALJ should further develop the record. In particular, plaintiff argues that there was a body of critical evidence the state agency physicians did not review or interpret in functional terms. Plaintiff points to evidence from the second half of 2023 and first half of 2024 that plaintiff argues is consistent with greater limitation, which was not interpreted by a medical source in functional terms. While plaintiff acknowledges that the ALJ is not required to base the RFC on a

particular medical opinion, he argues that an ALJ can only make a "reasonable, common sense lay interpretation of the medical data in functional terms" when "the objective medical findings are normal or mild. . . ." (Doc. 8 at PAGEID 783).

The Commissioner argues in response that it is precisely the province of the ALJ to assess a claimant's RFC, i.e., work-related limitations. The Commissioner points to various Sixth Circuit authorities finding that the ALJ may evaluate functional abilities. The Commissioner argues that an ALJ's general duty to develop the record is discretionary—required only when a decision cannot be made on the available evidence.

In reply, plaintiff acknowledges that an ALJ need not base the RFC on a medical opinion. He points out that his argument is different: the ALJ impermissibly translated a critical body of raw objective medical evidence into functional limitations on his own.

It is well-settled that "the ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of [the claimant's] residual functional capacity." *Coldiron v. Comm'r of Soc. Sec.,* 391 F. App'x 435, 439 (6th Cir. 2010) (internal citations and quotations omitted) (quoting *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004)). "An ALJ does not improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rendering an RFC finding." *Id. See also* 20 C.F.R. § 416.946(c) (the ALJ is responsible for assessing a residual functional capacity). As the Sixth Circuit explained:

> [The plaintiff] also argues that the ALJ's RFC lacks substantial evidence because no physician opined that [the plaintiff] was capable of light work. But "the *ALJ* is charged with the responsibility of determining the RFC based on her evaluation of the medical and non-medical evidence." *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) (emphasis added). An RFC is an "administrative finding," and the final responsibility for determining an individual's RFC is reserved to the Commissioner. SSR 96-5p, 1996 WL 374183, at *1-2 (July 2, 1996). "[T]o require the ALJ to base her RFC on a physician's opinion, would, in effect, confer upon the

> treating source the authority to make the determination or decision about whether an individual is under a disability." *Rudd*, 531 F. App'x at 728.

*Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 442-43 (6th Cir. 2017); *see also Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401 (6th Cir. 2018) ("We have previously rejected the argument that a residual functional capacity determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ.").

The decisions on which plaintiff relies for his position are all distinguishable and predate the Sixth Circuit's decisions noted above. In *Mitsoff v. Comm'r of Soc. Sec.*, 940 F. Supp. 2d 693 (S.D. Ohio 2013), the ALJ had substituted an interpretation of raw medical data "in place of the opinions of the Plaintiff's treating physician." *Id.* at 703. No such conflict with a medical source opinion exists here. Likewise, in *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181 (6th Cir. 2009), the Sixth Circuit held that the ALJ had erred by rejecting a medical opinion as "implausible" based on the ALJ's own judgment of the medical data. *Id.* at 194. But here, unlike in *Simpson*, no medical sources opined that plaintiff had limitations beyond those determined by the ALJ. *Cf. Smiley v. Comm'r of Soc. Sec.*, 940 F. Supp. 2d 592, 601 (S.D. Ohio 2013) (the ALJ's RFC for medium work impermissibly interpreted raw medical data where that RFC conflicted with "*all* treating and state agency physician medical opinions, as well as numerous reports regarding the severity of Plaintiff's impairments") (emphasis added). This is not a case where plaintiff "provided a medical opinion and the ALJ substituted h[is] own medical judgment." *Perez v. Comm'r of Soc. Sec.*, No. 2:14-cv-12403, 2016 WL 8094530, at *2 (E.D. Mich. Sept. 22, 2016).

Plaintiff also cites *Isaacs v. Astrue*, No. 1:08-cv-828, 2009 WL 3672060 (S.D. Ohio Nov. 4, 2009), where the Court held that the ALJ had improperly based his medium-work RFC on his own medical opinion where the record contained "no medical source opinion supporting the

ALJ's finding. . . ." *Id.* at *11. In *Isaacs*, however, the ALJ had "appear[ed] to rely on several physicians opinions for her RFC finding" but those opinions did not actually support the ALJ's RFC determination. *Id.* at *10. In such a case, there is no clear bridge between the evidence and the RFC determination.

At base, there is "no *per se* error in an ALJ making an RFC determination without medical opinion evidence regarding each specific restriction because . . . there could be other evidence of record that supports his decision." *Edwards v. Comm'r of Soc. Sec.*, No. 1:17-cv-925, 2018 WL 4206920, at *6 (N.D. Ohio Sept. 4, 2018). As discussed above, substantial evidence supports the ALJ's RFC determination.

Plaintiff makes a related argument that the ALJ should have further developed the record. The Commissioner argues in response that the duty to develop the record is discretionary and only required if evidence is too "inconsistent" or "insufficient" to render a decision, which is not the case here. *See* 20 C.F.R. § 416.920b(b).

In general, "[t]he ALJ has discretion to determine whether additional evidence is necessary." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 275 (6th Cir. 2010) (citing *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001)). The Sixth Circuit has held that the duty to conduct a full inquiry "does not require [record development] at government expense unless the record establishes that such [record development] is *necessary* to enable the [ALJ] to make the disability decision." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) (quoting *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977)). Because substantial evidence supports the ALJ's decision, he had no duty to further develop the record. Plaintiff's assignment of error should be overruled.

4. <u>State agency medical opinions</u>

Plaintiff argues that the ALJ conflated the supportability and consistency factors when evaluating the opinions of the state agency reviewers. Plaintiff argues that, in reality, the ALJ discussed only the consistency factor—comparing the state agency opinions to other evidence of record—and did not discuss whether their opinions were supported by objective medical evidence.

In response, the Commissioner acknowledges that the analysis of the supportability factor was quite generalized. (*See* Tr. 31 (stating that the state agency reviewers' opined limitations "are supported by the objective medical record")). Nevertheless, given the fact that state agency reviewers do not have their own records to reference, the Commissioner argues that this articulation suffices.

In reply, plaintiff emphasizes that the purported, vague, supportability analysis does nothing more than compare the state agency reviewers' opinions with other record evidence, which is—in effect—an analysis of consistency under the regulations. Plaintiff also argues that the error is not harmless because the ALJ partially relied on the state agency doctors' opinions, and plaintiff "deserves a clear explanation regarding whether the state agency findings are supported by their own analysis as required by [the] Commissioner's own regulations." (Doc. 11 at PageID 819).

The state agency reviewers found that plaintiff:

> has the exertional ability to perform light work. He cannot climb ladders, ropes, or scaffolds. He can occasionally climb ramps and stairs, stoop, kneel, crouch, or crawl. He can frequently balance. He can occasionally be exposed to extreme heat, cold, or humidity. He cannot be exposed to workplace hazards such as unprotected heights, dangerous machinery, and commercial driving.

(Tr. 31, referring to Tr. 74-75 and Tr. 86-87). The ALJ found these opinions "partially persuasive" and, in fact, assessed even greater limitations. (*Id.*).

ALJs must adhere to agency regulations governing the evaluation of medical opinion evidence. Under the regulations applicable to plaintiff's claims, the Commissioner will "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s),[5] including those from your medical sources." 20 C.F.R. § 416.920c(a). Rather, the Commissioner will consider "how persuasive" the medical opinion is. 20 C.F.R. § 416.920c.

In determining the persuasiveness of a medical opinion, the ALJ considers five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, and examining relationship, (4) specialization, and (5) other factors that tend to support or contradict a medical opinion. 20 C.F.R. § 416.920c(c)(1)-(5). The most important factors the ALJ must consider are supportability and consistency. 20 C.F.R. § 416.920c(b)(2). With respect to the supportability factor, "[t]he more relevant the objective medical evidence[6] and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 416.920c(c)(1). Similarly, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s). . . ." 20 C.F.R. § 416.920c(c)(2). The ALJ is required to "explain how [he/she] considered the supportability and consistency factors for a medical source's medical opinions" in the written decision. 20 C.F.R. § 416.920c(b)(2).

---

[5] A "prior administrative medical finding" is defined as "[a] finding, other than the ultimate determination about whether the individual is disabled, about a medical issue made by an MC [medical consultant] or PC [psychological consultant] at a prior administrative level in the current claim." 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5850. For clarity, the Court will refer to the limitations opined by the state agency reviewing physicians and psychologists as "assessments" or "opinions."

[6] Objective medical evidence is defined as "signs, laboratory findings, or both." 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5850.

Conversely, the ALJ "may, but [is] not required to, explain" how he/she considered the relationship, specialization, and other factors set forth in paragraphs (c)(3) through (c)(5) of the regulation. *Id.* However, where two or more medical opinions or prior administrative findings about the same issue are equally persuasive, the ALJ must articulate how he or she "considered the other most persuasive factors in paragraphs (c)(3) through (c)(5). . . ." 20 C.F.R. § 416.920c(b)(3). Finally, the ALJ is not required to articulate how he or she considered evidence from nonmedical sources. 20 C.F.R. § 416.920c(d).

This Court has acknowledged that "[i]t can be more challenging to distinguish between supportability and consistency when the opinion is from a state agency consultant" because "they do not have their own treatment records" and "must review and rely upon documents in the administrative record to support their opinions." *Tricia H. v. Comm'r of Soc. Sec. Admin.*, No. 2:23-cv-02090, 2024 WL 4010389, at *7 (S.D. Ohio Aug. 30, 2024) (report and recommendation), *adopted*, 2024 WL 4216493 (S.D. Ohio Sept. 17, 2024). Even if the Court were to conclude, however, that the ALJ did not adequately articulate his supportability analysis here, the error is harmless.

"[E]ven where the ALJ's decision is based on mistakes, this Court affirms those conclusions if the mistakes constituted harmless error." *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 524 (6th Cir. 2014) (citing *Berryhill v. Shalala*, No. 92-5876, 4 F.3d 993, 1993 WL 361792, at *7 (6th Cir. Sept. 16, 1993)). However, if the Court has "substantial doubt" as to whether the agency would have made the same ultimate disability finding without the ALJ's error, it should remand the case. *Id.* (quoting *Berryhill*, 1993 WL 361792, at *7). *See also Rabbers*, 582 F.3d at 654 ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless 'the claimant has been prejudiced on the

merits or deprived of substantial rights because of the agency's procedural lapses.'") (quoting *Connor v. U.S. Civil Serv. Comm'n*, 721 F.2d 1054, 1056 (6th Cir. 1983)). Plaintiff bears the burden to demonstrate harm. *Elaine S. v. Comm'r of Soc. Sec.*, No. 3:22-cv-240, 2023 WL 6290070, at *4 (S.D. Ohio Sept. 27, 2023) (finding a supportability-analysis error harmless where plaintiff failed to identify evidence conflicting with the ALJ's conclusion regarding the state agency opinion).

Although the articulation requirement in 20 C.F.R. § 416.920c(b)(2) serves as an important procedural safeguard, any failure to comply with the regulation in this case can be excused. The ALJ's findings were not merely consistent with the state agency opinions; they were more restrictive. The ALJ's failure to articulate his supportability analysis of the state agency physicians is harmless because the ALJ "ultimately included restrictions in [p]laintiff's RFC that were consistent with or greater than the restrictions recommended by [those physicians]." *Gwendolyn F.H. v. Comm'r of Soc. Sec. Admin.*, No. 3:22-cv-214, 2023 WL 5772796, at *4 (S.D. Ohio Sept. 7, 2023) (and cases cited therein). Plaintiff has not explained how he was prejudiced by the ALJ's failure to articulate his supportability analysis and has not carried his burden in this case. The Court finds any error by the ALJ in failing to articulate his supportability analysis to be harmless. *Cf. Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004) ("[I]f the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion, it may be irrelevant that the ALJ did not give weight to the treating physician's opinion, and the failure to give reasons for not giving such weight is correspondingly irrelevant."). Plaintiff's assignment of error should be overruled.

**IT IS THEREFORE RECOMMENDED THAT:**

1. Plaintiff's Statement of Specific Errors (Doc. 8) be **OVERRULED** and the Commissioner's non-disability finding be **AFFIRMED**.

Date: 10/13/2026

Karen L. Litkovitz
Karen L. Litkovitz
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

ROBERT M. ,
Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
Defendant.

Case No. 3:25-cv-00287
Rose, J.
Litkovitz, M.J.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).